IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN ROBERT MOORE &
LORI MAY MOORE                                                          PLAINTIFFS

VERSUS                                        Civil Action No. 1:21cv383 TBM-RHWR
JINDAL TUBULAR USA LLC
& EXPRESS SERVICES, INC. D/B/A
EXPRESS EMPLOYMENT PROFESSIONALS                         DEFENDANT(S)

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## RESPONSE TO MOTION TO DISMISS (DOCUMENT 9-10 - JINDAL)
## WHICH ALSO RESPONDS TO (DOCUMENT 11-12 – EXPRESS)

COMES NOW, the Plaintiffs, JOHN ROBERT MOORE & LORI MAY MOORE, (Moore or Moores), by and through their attorney of record, Michael W. Crosby, and respectfully submits this, their Response to Defendant Jindal's Motion to Dismiss, (Document 9-10), which also responds to the argument in Express' Motion to Dismiss and Memorandum, (Document 11-12) and does hereby state as follows, to-wit:

**FACTS:**

I. This Memorandum of Law is in Support of the Plaintiffs' Respond to Motion to Dismiss, and the relevant pleadings are as follows:

   a. Plaintiff's Response to Defendant Jindal           Doc. 14
   b. Plaintiff's Response to Defendant Express         Doc. 15
   c. Jindal's Motion to Dismiss                                 Doc. 9
   d. Express' Motion to Dismiss                               Doc. 11
   e. Jindal's Memorandum of Law                           Doc. 10
   f. Express' Memorandum of Law                          Doc. 11

II. Moore was hired by Express as an employee and was put to work for Jindal. As stated in Plaintiff's Response to the Motions to Dismiss, Jendal and Express entered into a contract of employment regarding Moore in which Moore's employment rights were described in a written agreement, (Ex "A" to the Complaint, Doc. 2, 15 of 20),

which Moore contends imposed contractual duties over and above the Workers' Compensation remedy. As stated in said contract, Moore was an "associate" of Jindal and an employee of Express. In the Workers' Compensation settlement, Express was released from everything type of claim; however, – the release or every type of claim was with respect to Workers' Compensation. Moore himself and not his wife, Lori Moore, signed said release – Document 12-1 to 4). As such, the release or Worker's Compensation claims was between Moore and Express and not with Jindal.

III. Defendants argue that Lori Moore's claims are derivative from John Moore's claims in Workers' Compensation Claims. Moores' agree; however, this case is not a Workers' Compensation case, and the claims sought are for claims over and above Workers' Compensation.

IV. Furthermore, both Defendants claim that there exist few exceptions in Mississippi to the Worker's Compensation Law, and Moores agree with that statement. Additionally, both Defendants claim that the only exception to the exclusive remedy of Worker's Compensation is when an "intent to injury" is alleged, which is limited by a one-year statute of limitations. Again, Defendants are making an argument that does not apply to the claims in the case at bar.

V. The relevant issues and law Moore submits that requires this court to decide is on page 2 of the Complaint and states as follows: page and claims are set forth in Moore's Complaint as follows:

**ISSUES OF LAW AND FACT TO BE DECIDED:**

a. Is Moore a third-party beneficiary of the contract/agreement in which his rights were protected by virtue of said agreement including Jindal, Express and its "associates."

b. Can an employer contract or agree to be responsible and therefore liable for damages, separate from the exclusive remedy provision of the Workers' Compensation statute?

c. Did Jindal fail to provide Express' associates (i.e. Moore) with a safe, suitable workplace and equipment and to comply with all applicable Federal, State and local employment laws?
   (1) As a result of the failure to provide a suitable workplace and comply with said laws and regulations, was Moore injured?
   (2) What are the damages?

d. Did Jindal manufacture the relevant motorized equipment to the extent that it has a dual legal responsibility to Moore?

e. Did Jindal and/or Express conspire to conceal the unsafe practices and violations at Jindal:
   (1)    from unsuspecting employees, which caused Moore injury?
   (2)    from OSHA's reporting requirements, which caused Moore injury?

f. Did Express know of the numerous employee injuries at Jindal and keep them from Moore, thereby resulting in Moore's injury?

VI. Next, Moore sets forth the Facts Relevant to all issues and claims as follows:

**FACTS RELEVANT TO ALL ISSUES AND CLAIMS:**

8. Moore was an "associate," of Express, a staffing agency, who provided Jindal with labor at their manufacturing plant. An agreement/contract[1] which set forth the responsibilities and duties of the parties was executed and is attached hereto as Ex. 'A." For the purposes of this Complaint, the key paragraphs, 1,2,4,7 & 8, as follows:



Express Services, Inc. (Express) dba Express Employment Professionals (referred to as "Express," "We" or "Our"), makes it easy for you to do business with us. The first step to establishing a successful staffing relationship is to ensure a clear understanding of each party's responsibilities. We appreciate your business and look forward to the opportunity to support you with outstanding professional employment services in consideration of your agreement to the following terms and conditions:

---

[1] We have requested a better copy of the contract/agreement so that it will be easier to ready, but we have not yet secured the same.

1. We hire associates as Express employees, and provide all wages, taxes, withholding, workers' compensation, and unemployment insurance. Medical benefits and vacation pay are also available to associates who qualify. We recruit and assign associates to you to perform the job duties you specify. You agree to notify us if those duties or the workplace of an associate changes.
2. Express complies with all Federal, State, and Local employment laws and regulations. You agree to provide our associates with a safe, suitable workplace and equipment, and to comply with all applicable Federal, state, and local employment laws. You agree to indemnify and hold Express harmless from claims or damages resulting from your non-compliance with applicable laws and regulations. Express pays associates promptly, based on information approved by you. You agree to pay the charges based on the time card or other mutually acceptable recording method by the invoice due date. A monthly service charge of (18% per annum) may be assessed on charges remaining unpaid 30 days after the invoice date. We are entitled to reasonable collection fees, attorney fees, and other expenses incurred to collect all charges on your account(s).
4. We provide insurance policies to cover Express associates for Workers' Compensation, Commercial General Liability, Employers Liability, Fidelity Bond, Errors and Omissions, and Hired/Non-Owned Automobile coverage in an amount not less than $1,000,000 per occurrence. You agree to maintain liability insurance for any motor vehicle, forklift, or other motorized mobile equipment operated by an Express associate, and agree to waive all rights of recovery against Express as the employer of the Express associate.
7. Express will provide associates for positions where operating a motor vehicle, forklift, or other motorized equipment is required, if notified in writing prior to an assignment. We must know in advance, so we can assign associates who are qualified to meet your specifications. During an assignment, if our associate operates a motor vehicle, forklift, or any other motorized equipment, you agree to indemnify and hold us harmless for bodily injury, property damage, collision, or public liability claims, regardless of fault.
8. You supervise, direct, and control the work performed by Express associates, and assume responsibility for all operational results, including losses or damage to property or data in the care, custody, or control of an Express associate. You agree to indemnify and hold us harmless from any claims or damages that may be caused by your negligence or misconduct, and agree on behalf of your insurer(s) to waive all rights of recovery (subrogation) against us.

As stated above,
**Paragraph "1"**
1. Moore is an "associate," of Express.
2. Express hires associate as Express employees.
3. Express provides all wages and workers' compensation and medical benefits.
4. Express recruits and assigns the associates to Jindal to perform the job duties Jindal specifies.

**Paragraph "2"**
5. Express agreed to comply with all Federal, State, and Legal employment laws and regulations.
6. Jindal agreed to provide Express' associates (i.e. Moore) with a safe, suitable workplace and equipment and to comply with all applicable Federal, State and local employment laws.
7. Jindal agreed to indemnify and hold Express harmless from claims or damages resulting from their non-compliance with applicable laws and regulations.

**Paragraph "3"**
a. Express' stated goal was that Jindal would be satisfied with the job performance of Express' associates, but for any reason, if dissatisfied, with the associates' work, a replacement would be provided.

**Paragraph "4"**
b. Express provided insurance policies to cover Express' associates for Worker's; Compensation, Commercial General Liability, Employers' Liability, Fidelity Bond, Errors and Omissions, and Hired/non-Owned Automobile coverage.

|  | Jindal agreed to maintain liability insurance for vehicles and machines. |
|---|---|

**Paragraph "7"**

    c. Express agreed to provide associates qualified to operate vehicles and equipment motorized.

    d. Jindal agreed that if an associate operated a motor vehicle or motorized equipment, and during their assignment, Jindal would indemnify and hold Express harmless for bodily injury … public liability, regardless of fault.

**Paragraph "8"**

    e. Jindal supervised, directed and controlled the work performed by Express associates and assumed responsibility for all operational results, including losses or damages to property or data in the care custody or control of an Express associate.

    f. Jindal agreed to indemnify and hold harmless, Express, from any claims or damages that may be caused by Jindal's negligence or misconduct an agree on behalf of Jindal's insureds to waive all rights of recovery (subrogation) against Express.

VII. Therefore, as set forth above, Moore is relying upon said agreement/contract to impose duties separate and apart from Worker's Compensation and not concerned with the exclusive remedy. As set forth in Moore's Complaint,

**LAW REGARDING MISSISSIPPI'S WORKERS' COMPENSATION LAW AND**
**--EXCLUSIVE REMEDY**

17. Workers' compensation was created to solve the problems associated with employees being treated like disposable machinery and being unable to secure compensation for injuries on the job. Workers' Compensation was intended to allow immediate compensation for work related injuries, in the scope of work, covering 100% of the medical damages and a portion of their wages, at the expense of full compensation found in the common law (i.e. it forces the employee to relinquish their right to sue his employer for the tort of negligence). Unfortunately, many times the employee must retain counsel and fight for his benefits, and often times the clever employer will allow unsafe workplaces and fail to follow the regulations designed to protect the worker, because they

need only be concerned with the exclusive remedy of Workers' Compensation. It is understood, unfortunately, that the employer can allow conditions to exist which place the employee in harm's way with foreseeable injury, but remain protected by the exclusive remedy, unless the employee can prove fraudulent concealment, fraud, or intentional injury. However, there are some additional considerations which provide recovery for injuries, irrespective of the exclusive remedy of Workers' Compensation, two of which include (1) contractual agreements that provide additional coverage for the employee and (2) situations involving a dual capacity[2]. In the case at bar, Moore has already been compensated for the coverages provided by Workers' Compensation. This Complaint is for the contractual damages by virtue of the contract entered into as Ex. "A." Additionally, Moore submits that Jindal operated in a "dual capacity," role by virtue of its manufacturing of its own equipment.

18. In the case at bar, Moore asserts that he is the beneficiary and/or third-party beneficiary of the contract/agreement in which Jindal and Express identified him as Express' associate. Moore submits that Jindal, by contract/agreement, that it would provide a safe workplace and follow the applicable laws and regulations. Jindal did not do so, and as a result, Moore was seriously injured.

19. Additionally, Moore asserts that Jindal and Express both were aware of the unsafe workplace and failure to follow the applicable laws and regulations, and that employees were being injured as an exceptionally tragic frequency, all of which was concealed from Moore. This includes an arrangement to avoid reporting to OSHA the injuries at Jindal.

---

[2] Defendants submitted authority to support the contention that "dual-capacity" is not accepted in Mississippi as a claim in Worker's Compensation cases. Moore submits that the contract/agreement provided extra duties and responsibilities, including a duty to not manufacture equipment and require it to be used in an unsafe work environment and contrary to the provision of said agreement set forth above.

20. Finally, Moore asserts that Jindal modified and redesigned its equipment, causing it to be unsafe, intentionally, to increase productivity at the expense of the health of the employees. While Mississippi Courts allow the employer to hide behind the exclusive remedy even when the employer willfully permits hazardous conditions to exist which are substantially certain, although not specifically intended, to result in injury or death of the employee, our Court does recognize that there is nothing in the Workers' Compensation law to prevent contracting for indemnity or additional liability.

VIII. <u>MISSISSIPPI AUTHORITY/LAW</u>

In the case of <u>Heritage Cablevision v. New Albany Elec. Power Sys. of City of New Albany, 646 So. 2d 1305, 1314 (Miss. 1994)</u>, the Mississippi Supreme Court recognized the right of injured third-parties, such as Moore, to benefit from a written agreement which operated outside of the Worker's Compensation law. In deciding whether worker's compensation laws provide an injured party his exclusive remedy in a situation with an agreement to provide for coverage beyond worker's compensation, the Court stated:

> The exclusivity provision of the Mississippi's Worker's Compensation Act is found at 71–3–9 of the Mississippi Code Annotated:
> **\*1314** The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parent, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.
> *Miss.Code Ann.* § 71–3–9.

The existence of a contract for indemnity, however, changes the applicability of the exclusiveness statute. Although this court has not ruled specifically in this area, the aforementioned federal *Lorenzen* case addresses this issue:

The existence of the express indemnity agreement between Clearview and South Central Bell takes this case outside the prohibition of § 71–3–9, Mississippi Code of 1972, Annotated and brings this case within the majority rule recognized in Anno., 100 ALR.3rd 356; and *Ball v. Oregon Erecting Co.,* 273 Or. 179, 539 P.2d 1059, 1061–63 (1975), that workmen's compensation acts do not bar a claim for indemnity by the third-party from the employer when that claim is based on an express contract of indemnity.

*Lorenzen,* 546 F.Supp. at 696.

The Mississippi Worker's Compensation Act is intended to benefit employees and guarantee that they will be remunerated if injured during the course of employment. Mississippi Code Annotated § 71–3–1 reads in part:

**Citation and Purpose.**

This chapter shall be known and cited as "Worker's Compensation Law," and shall be administered by the workers' compensation commission, hereinafter referred to as the "commission," cooperating with other state and federal authorities for the prevention of injuries and occupational diseases to workers and, in event of injury or occupational disease, their rehabilitation or restoration to health and vocational opportunity....

*Miss.Code Ann.* § 71–3–1.

The enforcing of a freely entered into indemnity clause in no way impugns the beneficent purposes of the statute. Although such an agreement may alter who ultimately pays when an employee is injured, the employee will still be compensated. Because of this, the 1967 indemnity clause can fairly be said in this case to void the effects of the worker's compensation exclusivity statute and to allow a claim for indemnification.

After reviewing the record before us in the light most favorable for the non-movant Heritage Cablevision, it is clear that the movant New Albany Electric is entitled to summary judgment on the issue of the validity and applicability of the indemnity clause. Although Heritage was not one of the makers of the 1967 licensing agreement which contains the indemnity clause, it is now bound by that agreement under principles of equity and equitable estoppel and by its own admission that the agreement contains its duties and obligations to New Albany Electric. Furthermore, Miss.Code Ann. § 31–5–41 does not prevent the enforcement of this clause as § 31–5–41 applies only to construction contracts and the 1967 contract here being considered is a licensing agreement.

In addition, a reading of the plain language of the indemnity clause shows that it is meant to cover an accident such as the one which befell Biffle. Moreover, no ambiguity exists which would allow this court to look beyond the contract's plain words to examine parol evidence. Finally, as the freely entered into indemnification clause takes this case outside of the workers' compensation

exclusivity statute, the workers' compensation act will not bar a claim for indemnity under the indemnification clause.

<u>Heritage Cablevision v. New Albany Elec. Power Sys. of City of New Albany, 646 So. 2d 1305, 1313–14 (Miss. 1994)</u>

Therefore, Moore's claims survive. His claims are:

a. Breach of contract
b. Tortuous breach of contract – bad faith
c. Negligent infliction of emotional distress
d. Fraudulent concealment and implied duty for good faith and fair dealing
e. Dual capacity

All of said claims are based upon the contract/agreement separate from worker's compensation.

VIII.  Fiduciary Duty

IX.  Defendants claim that no fiduciary duty existed between Defendants and Moore. However, in Mississippi, the existence of a fiduciary duty is a question of fact for a jury. The Court stated as follows:

X.
¶ 25. In *Lowery v. Guaranty Bank & Trust Co.,* 592 So.2d 79 (Miss.1991), the court summarized the law on fiduciary relationships as follows:
> "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed. Additionally, a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger.

Saucier v. Peoples Bank of Biloxi, 150 So. 3d 719, 725 (Miss. Ct. App. 2014)

In the case at bar, Moore's life was at great risk when he performed his duties, and in fact, it was ultra-hazardous. Moore's life was in the hands of the managers, and the managers breached that fiduciary duty, completely disregarding the safety of Moore and moved a machine that was used to protect Moore, simply because the manager wanted to use it somewhere else to keep production moving faster at the great risk to the life of Moore. Life in hands trust creates a fiduciary duty. On the date of the injury, Moore was required to repair a dump-station. A large cylinder which weighed many tons was lifted up high enough for Moore to crawl under it to perform repair work. The floor had a hold, approximately 4' deep and a yard in diameter, and Moore was inside the hole with the many tons cylinder suspended above him. The adjacent cylinders provided some support, but a crane was used to keep the cylinder raised high enough for Moore to perform his labor. A manager, looking right at Moore, directed other employees to move the crane, stating that it was needed elsewhere. Moving the crane left insufficient support to keep the cylinder from crushing Moore. As one would expect, the cylinder fell, striking Moore on his shoulder, causing severe damage to Moore's shoulder, back and ancle, and his body as a whole. Moore was trapped inside the hole in the floor, and through a miracle, was not inches to the side where he would have been smushed. The severe pain from the breaking of his back caused disorientation to a degree.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Moore respectfully submits that the Motion to Dismiss, should itself, be dismissed, and the Plaintiffs allowed to proceed with discovery to prove the claim.

This the 14th day of January 2022.

        Respectfully submitted,
        John and Lori Moore, Plaintiffs

By: *Michael W. Crosby*_____
     Michael W. Crosby, Attorney for Plaintiffs

Michael W. Crosby
Attorney at Law
Bar No. 7888
2111 25th Ave.
Gulfport, MS  39501
228-822-2727
228-865-0337 facsimile
michaelwcrosby@bellsouth.net

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

This the 14th day of January 2022.

BY: *Michael W. Crosby*_____